### GEORGE W. NICHOLS *v.* WARREN A. GRICE.

An order of seizure and sale on notes secured by mortgage should not be issued for the costs of protest, when there was no evidence that the notes had been protested.

APPEAL from the District Court of Concordia, *Farrar,* J. *Bullard* and *Frost,* for plaintiff. *Stacy* and *Sparrow,* for defendant. The judgment of the court was pronounced by

SLIDELL, J. There being no evidence of protest and costs of protests, they were improperly allowed. See *Cummings* v. *Archinard,* 1 Ann. 280.

It is therefore decreed, that the decree of seizure and sale be amended so as to exclude therefrom ten dollars costs of protest; and that so amended, said decree be affirmed; the costs of this appeal to be paid by the appellee.

PRESTON, J., dissenting. In 1840, *Nancy Neale Jones* donated to her daughter, *Sarah A. Morris,* the upper half of a cotton plantation situated on the river, in the parish of Concordia, and fifty slaves. In 1844, *G. W. Nichols* married her daughter, she being then the widow of a *Mr. Grice.* In 1845, she died without issue of the marriage, leaving a will, by which she gave the land and slaves to the plaintiff, her surviving husband. *Mrs. Jones* contested his right to the property on various grounds, which it is unnecessary to enumerate, for, on the 21st of August, 1846, they entered into a compromise, by which *Nichols* agreed to re-convey the property to her for twenty-three thousand dollars, payable in installments from the 1st of January, 1847, to the 1st of January, 1853; and to secure the same with the interest that might accrue, she gave a special mortgage upon the whole plantation, and not only upon the slaves re-conveyed, but upon others, amounting in the aggregate to eighty-seven. There was a clause in this act of compromise to the effect, that the delay granted to *Mrs. Jones* for the payment of the twenty-three thousand dollars, was granted for her sole accommodation, but not for the benefit of her heirs; and, therefore, it was expressly agreed between the parties, that in case of the death of *Mrs. Jones,* at any time previous to the expiration of the delays for the payment of the $23,000, in that case, the amount which might remain unpaid should be considered as due and demandable in cash, with the benefit of the hypothecary rights and actions resulting from the mortgage, although the notes for the sums remaining unpaid, might not then have matured, according to their face.

*Mrs. Jones* did die in 1849, and before the maturity of the three last notes. She left a paper purporting to be her last will, but which was not made according to the forms required by law. Nevertheless, it was admitted to probate by the clerk of the parish of Concordia, and *Warren A. Grice* was qualified as testamentary executor, and letters testamentary were delivered to him. The unpaid notes were presented to him, and he endorsed upon them that he had no objection to their payment.

*Nichols* soon afterwards applied for and obtained an order of seizure and sale of the plantation and slaves for their payment. He annexed a certified copy of the act of mortgage, the notes duly identified with it, and the letters of executorship delivered to *Grice*. The writ of seizure and sale was issued and notice served upon the executor.

*Martha Ann Pearson* applied for and obtained an appeal from the order of seizure and sale. She alleges that she is the sole heir of *Nancy N. Jones*, and entitled, by inheritance, to the legal ownership of all the property belonging to her succession; that the pretended will under which *Grice* claims to be executor is null and void on its face; and that there is error on the face of the record in which the order of seizure and sale was obtained; by which she will suffer irreparable injury, should it be carried into effect. And she specially complains that she had no notice of the executory proceeding, although she had an agent residing in the State.

The paper purporting to be the will of *Nancy N. Jones*, having been duly admitted to probate, and the executor appointed and qualified, neither it nor the appointment can be treated as a nullity until they are annulled by the judgment of a competent court. In the meantime, the executor is in the possession of and represents the estate. The creditor secured by a special mortgage had a right to look to him for his debt, and to carry on executory proceedings against the mortgaged property in his possession, contradictorily with him to enforce its payment. It was so decided in the case of *Bougille, Administrator*, v. *Faille*, 1st Ann. 205, in which the injunction of an order of seizure and sale against property in the possession of an administrator, on the ground that it was in the course of administration, was dissolved; the court being of opinion that the mortgaged property in the hands of the administrator was liable to seizure and sale, even although the heirs had accepted the succession only with the benefit of inventory. The objection to executory proceedings is far less plausible in the present case, in which the succession is perfectly solvent. Those proceedings cannot therefore be set aside, merely because they were not notified to the heir, and are not carried on contradictorily with her.

Several reasons have been urged in argument for setting aside the order of seizure and sale. It is urged, that the act of mortgage annexed to the petition does not import a confession of judgment. The act, as required by the 733d article of the Code of Practice, was passed before a notary public and two witnesses, and the debtor acknowledged the debt for which she gave the mortgage. It was not necessary expressly to confess judgment in the act. An obligation contracted before a notary was declared, in the ordinances of Governor O'Rielly, when executory proceedings were first introduced into the country, to import a confession of judgment, and has been so understood by the bench and the bar from that day until the present time.

What has been heretofore said, disposes of the objection, that he should only have obtained an order of sale of the property for the payment of his debt, under articles 990, 991 and 992 of the Code of Practice. These articles apply parti-

cularly to ordinary creditors; although undoubtedly an hypothecary creditor might proceed under them if he thought proper, but is not obliged to adopt that course.

It is said the notes were not due on their face; that their maturity depended upon a condition, the death of the maker, and that there is no authentic evidence that the condition has happened. The letters of executorship granted by the proper officer are authentic evidence of the death of the testator. It surely cannot be expected, that the order of seizure and sale should be arrested, on the ground that it does not appear that the mortgagor is dead, on the application of the appellant who urges it as heir.

It is next stated, that no interest is stipulated in the act of mortgage. This is an error; the mortgage is given in express terms to secure the debt and eventual interest, and the interest is due from the death of the mortgagor, because, by express agreement in the authentic act of compromise and mortgage, the payment of the debt was not to be postponed beyond that event. Interest was moreover due by law as well as by contract: the 989th article of the Code of Practice expressly declaring that interest shall be allowed on the debts of a succession from the death of the debtor, if they are due at that time.

It is pressed, as a reason for annulling the order of seizure and sale, that it includes ten dollars for the costs of protesting the notes, although it does not appear that they were protested. There is no pretence that the executor is not able to indemnify the heirs for this small sum: if not being due, he suffers it to be collected.

It is probable, too, that the protests were made, as it was a proper means of insuring interest on the notes, and of facilitating the proof of the right to that interest by authentic evidence, which would have been filed, if required. If they were not protested, the defendant or appellant could have enjoined the execution to the extent of the ten dollars, at the costs of the plaintiff. These suggestions are made to show the unreasonableness of the appeal on this ground.

Be that as it may, it has long been settled that the title claimed to be one importing a confession of judgment, and the order of seizure and sale upon it are together a judgment from which an appeal may be taken. Yet appeals taken from such proceedings, must be subject to the same rules which govern all other appeals from final orders or judgments, because our laws have made no distinction between them.

Appeals should be maintained only to redress some injury, and not to enable parties to delay and annoy their adversaries in the pursuit of their undoubted rights; in a word, to do justice, and not to aid injustice. One principle well settled as to appeals is, that what ought easily have been remedied in the district court, will not generally be redressed in this court, if no effort was made to obtain redress in the district court; another, that the Supreme Court will not reverse judgments for small and unimportant errors.

The appellant, as well as the defendant, had ten days to apply to the judge to amend the order of seizure and sale, by striking out the claim for ten dollars for the protest of the notes; and which, no doubt, would have been done on mere application. No doubt, moreover, the plaintiff would have remitted it on mere suggestion, if he had not the authentic acts of protest in his hands, ready to file if required. Being a title to costs alone, which would be the subject matter of taxation afterwards, like all other costs, he probably having the protests, did not deem it necessary to file them.

Instead of adopting this plain and simple mode of protecting herself against the payment of the ten dollars, not because they were not due, but because of the mode in which payment was sought, the appellant has caused the expense and vexation of an appeal to herself or her adversary; has occupied a good deal of the time of this court and other officers of justice, which might have been devoted to the redress of real injuries; and has delayed the payment for more than a year, of a large debt of upwards of thirteen thousand dollars, secured by mortgage upon the property of a distant relation, whom she never knew, and from whom she inherited it subject to this incumbrance; the payment of which she has prevented, in violation of the first duty of heirs to pay the debts of the successions they inherit, which are evidenced by authentic acts.

She even urges that the judgment should be reversed; because the order of seizure and sale, by a minute calculation, which may or may not be correct, was issued for a cent and a fraction more than was due : but to this it certainly may be answered, *De minimis non curat lex.*

I am of opinion that the judgment of the district court should be affirmed, with costs.